# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TIAWANDA MOORE, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|   v. | )   12 C 238 |
| | ) |
| CITY OF CHICAGO, Chicago Police | )   Judge John Z. Lee |
| Officers JASON WILSON, RICHARD | ) |
| PLOTKE, and LUIS ALEJO, | ) |
| | ) |
|     Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Tiawanda Moore has sued the City of Chicago and Chicago Police Officers Jason Wilson, Luis Alejo, and Richard Plotke pursuant to 42 U.S.C. § 1983 for violating her constitutional rights under the First and Fourth Amendments to the U.S. Constitution, as well as under Illinois law for malicious prosecution. The City of Chicago, Alejo, and Plotke ("Defendants") have moved for summary judgment. For the reasons provided herein, the Court denies Defendants' motion.

## Facts

The following facts are undisputed unless otherwise noted. On July 6, 2010, Officer Wilson and his partner responded to a police call regarding a domestic disturbance at the residence of Moore and her boyfriend. Defs.' LR 56.1(a)(3) Stmt. ¶¶ 9-10. For reasons that are unclear, after arriving at the scene, Officer Wilson entered Moore's bedroom and found her alone. *Id.* ¶ 12; Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 2. Officer Wilson touched Moore's chest and buttocks with both hands. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 2. After Moore quickly took Officer Wilson's hands off of her, Officer Wilson wrote down his phone number on a piece of paper, set

the paper on Moore's bed, and told Moore not to tell anyone that he gave her his number. *Id.* ¶ 3.

Moore called 311 to report her allegations against Officer Wilson. Defs.' LR 56.1(a)(3) Stmt. ¶ 14. Moore's call prompted the initiation of a complaint log file, which was then assigned to the Chicago Police Department's Internal Affairs Division, *id.* ¶ 15, which investigates complaints of misconduct alleged against Chicago police officers. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 4. The complaint log file was assigned to Sergeant Plotke, who then asked Officer Alejo to assist him with the investigation. Defs.' LR 56.1(a)(3) Stmt. ¶¶ 15, 22.

On August 18, 2010, Moore met with Sergeant Plotke and Officer Alejo to discuss her complaint. Defs.' LR 56.1(a)(3) Stmt. ¶¶ 23-25. Moore explained the details of what had happened, including how Wilson had touched her body, as well as where and how the incident took place. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 7; *see* Defs.' Ex. C, Alejo Dep. at 36:18 (characterizing Moore's complaint against Wilson as one of "sexual abuse"). Plotke and Alejo explained that Moore had two choices. She could sign a sworn affidavit, which would mean that the investigation into Wilson's conduct would go forward, or sign a letter of declination, which would mean that any investigation would not go forward. Defs.' LR 56.1(a)(3) Stmt. ¶ 32. She showed them the piece of paper that Wilson had given her on which was written the name "Jay" and Wilson's phone number. *Id.* ¶ 34. Plotke and Alejo then asked her if she wanted to proceed with the complaint, and she stated that she did. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 8.

At this point, Plotke and Alejo told Moore that if she tried to take the case to court, she probably would not win. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 9. Plotke also told her that they already had spoken to Wilson and his sergeant, and Alejo stated that they could almost guarantee that what Wilson did to her would never happen again. *Id.* ¶ 10. Plotke told Moore that "if it does

happen again, we will already have the first complaint on file, but you can sign off on this piece of paper stating that you no longer want to proceed with the charges. You want to do that?" *Id.* ¶ 11. Alejo added, "We don't feel like you should proceed with charges due to the fact that we already talked to the sergeant and the officer." *Id.* ¶ 13.

Moore repeated her desire to proceed with the charges. *Id.* ¶ 14. She asked them whether there was a sergeant or supervisor in the building to whom she could speak. *Id.* ¶ 15. Plotke responded that he was the sergeant and no one else would take her case. *Id.* ¶ 16.

Plotke and Alejo then left the room, and Moore began to fill out the sworn affidavit. *Id.* ¶¶ 17, 23. Because Moore felt that Plotke and Alejo were attempting to convince her to drop her complaint against Wilson, she activated a recording application on her Blackberry cell phone so that she could record the rest of the interview. *Id.* ¶ 23; Defs.' LR 56.1(a)(3) Stmt. ¶ 40; Pl.'s Dep. at 257:18-21.

The parties dispute the sequence of the events that followed. According to Defendants, Plotke and Alejo re-entered the interview room, and Alejo observed a microphone symbol with wave bars on the screen of Moore's Blackberry phone. Alejo believed that a voice recording application had been activated, *id.* ¶¶ 42, 47, and he then told Plotke that he needed to speak with Plotke outside of the interview room. *Id.* ¶ 48. After exiting the room, Alejo explained to Plotke what he had observed. *Id.* ¶ 49.

According to Moore, after she engaged the recording function on her phone, the officers reentered the room. At this point, she asked to leave and walked toward the door, but before she could leave the room, Plotke told her, "no, sit down. . . . [You are] not going anywhere." Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 19-21; *see* Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 19-21; Pl.'s Dep. at 260:20-24; Trial Tr. 150-51. Thus, by Moore's account, Plotke impeded her exit from

3

the interview before he had an opportunity to learn that Moore had been recording the conversation. As we shall see, this dispute is critical.

At one point, Alejo asked Moore whether she was recording the interview. *Id.* ¶ 50. Moore denied that she was. *Id.* ¶ 51.[1] Alejo told her that it was illegal to record a conversation without the consent of all parties involved. *Id.* ¶ 52. Alejo then apparently left the room, leaving Plotke alone with Moore. *See* Pl.'s Dep. at 263:24-264:19.

Plotke asked Moore to give him the phone, which she did. *Id.* at 261:4-9; Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 33. According to Moore, she then told Plotke that she did not know that recording the interview was illegal, and Plotke responded that, even if she was ignorant of the law, she could still go to jail. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 51; Pl.'s Dep. at 261:17-24, 263:3-18. Moore again stated she did not know that recording the interview was illegal, and when she asked Plotke, "Am I going to jail?" he replied, "Yes, you are going to jail." Pl.'s Dep. at 263:19-23. Plotke left Moore alone in the interview room, taking the phone with him. *Id.* at 263:24-264:19.

A woman then entered the room and sat with Moore. *Id.* at 265:4-17. Moore told her that she wanted somebody else to investigate her complaint against Wilson because she felt that Plotke and Alejo were trying to talk her out of pursuing her complaint. *Id.* The woman asked Moore for the password to her Blackberry phone, and Moore gave the woman her password so that the woman could access her phone. *Id.* at 265:18-23.

Plotke and Alejo later returned to the room and officially placed Moore under arrest for two counts of felony eavesdropping, and her Miranda rights were explained to her. Defs.' LR

---

[1] Although Moore disputes that she denied recording the interview, the portion of the record that she cites is unsupportive. *See* Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 51; Pl.'s Ex. B, Moore Dep. at 256:2-257:24. Thus, she has not created a dispute regarding her denial.

4

56.1(a)(3) Stmt. ¶ 54. A search warrant was executed that day at 8:15 p.m., and a recording of Moore, Plotke, and Alejo's conversation was subsequently recovered from the phone. *Id.* ¶¶ 65-66.

After Moore's arrest, Plotke made a formal request to reassign the investigation of Moore's complaint regarding Officer Wilson to other officers. Defs.' LR 56.1(a)(3) Stmt. ¶ 63. The investigation was reassigned to new investigators and went forward. *Id.* ¶ 65.

As for Moore, she asserts that she spent two weeks in Cook County Jail. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 33. On August 23, 2011, a jury found Moore not guilty of the two counts of felony eavesdropping. *Id.* ¶ 39.

## Discussion

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate for cases in which "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Plotke and Alejo argue that summary judgment should be entered in their favor because no reasonable jury could find that they lacked probable cause to seize and arrest Moore for eavesdropping. In the alternative, Plotke and Alejo contend that, even if they had lacked probable cause, they should be afforded qualified immunity because the undisputed facts demonstrate that they had "arguable probable cause" for the arrest.

For her part, Moore argues that she has created an issue of fact for trial as to the existence of probable cause. She also asserts that this issue of fact precludes the Court from granting Plotke and Alejo qualified immunity on summary judgment. In short, Moore contends that her

actions fell within an exception to the Illinois eavesdropping statute (as discussed further below) because she had reason to suspect that Plotke and Alejo were committing the crimes of official misconduct, obstruction of justice, and unlawful restraint. Because the officers were aware that Moore's activities qualified for this exemption – or so Moore's argument goes – both probable cause and arguable probably cause were lacking.

Police officers have "probable cause to arrest an individual when the facts and circumstances within their knowledge and of which they [have] reasonably trustworthy information are sufficient to warrant a prudent [person] in believing that the [suspect] had committed or was committing an offense." *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1246 (7th Cir. 1994) (quotation omitted). "In deciding this question of law as part of a motion for summary judgment, however, we must give the non-moving party the benefit of conflicts in the evidence about what the officers actually knew at the time." *Williams v. City of Chi.*, 733 F.3d 749, 756 (7th Cir. 2013).

Apropos to this motion, "probable cause is lacking if an officer has knowledge of matters tending to establish that the arrestee is entitled . . . [to] a statutory exemption . . . ." *Haywood v. City of Chi.*, No. 01 C 3872, 2002 WL 31545883, at *2 (N.D. Ill. Nov. 15, 2002); *see Estate of Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999) (holding that officers lacked probable cause at the time of arrests because they had full knowledge of facts and circumstances that established that plaintiffs were justified in carrying concealed weapons during their work); *see also Hodgkins ex rel. Hodgkins v. Peterson*, 355 F.3d 1048, 1061 (7th Cir. 2004) ("A police officer may not ignore conclusively established evidence of the existence of an affirmative defense, *Estate of Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999), but the officer has no duty to investigate the validity of any defense."). "[A] plaintiff claiming that he was arrested

without probable cause carries the burden of establishing the absence of probable cause." *McBride v. Grice*, 576 F.3d 703, 706 (7th Cir. 2009).

Furthermore, the qualified immunity doctrine protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "In this context, qualified immunity provides shelter for officers who have *arguable probable cause* to arrest—*i.e.*, those officers that reasonably but mistakenly believe they have probable cause." *Gutierrez v. Kermon*, 722 F.3d 1003, 1008 (7th Cir. 2013) (quotation omitted; emphasis added). Although qualified immunity is an affirmative defense to a § 1983 action, the plaintiff bears the burden of proving that a defendant is not entitled to qualified immunity. *Eversole v. Steele*, 59 F.3d 710, 717 (7th Cir. 1995).

"The existence of probable cause or arguable probable cause depends, in the first instance, on the elements of the predicate criminal offense(s) as defined by state law." *Abbott v. Sangamon Cnty.*, 705 F.3d 706, 715 (7th Cir. 2013). This then leads us to a discussion of the Illinois eavesdropping statute.

In Illinois, a person commits eavesdropping when she: "[k]nowingly and intentionally uses an eavesdropping device for the purpose of hearing or recording all or any part of any conversation or intercepts, retains, or transcribes electronic communication unless [s]he does so . . . with the consent of all of the parties to such conversation or electronic communication." 720 Ill. Comp. Stat. 5/14-2(a)(1)(A).[2] However, exempt from criminal liability is the "[r]ecording of

---

[2] After Moore's prosecution, the eavesdropping statute was declared unconstitutional. *See People v. Clark*, __ N.E. 3d ___, 2014 WL 1097190, at *6 (Ill. Mar. 20, 2014) (holding 720 Ill. Comp. Stat. 5/14-2(a)(1)(A) is unconstitutional); *People v. Melongo*, __ N.E. 3d ___, No. 114852, 2014 WL 1096905, at *5 (Ill. Mar. 20, 2014) (declaring 720 Ill. Comp. Stat. 5/14-2(a)(1), (3) unconstitutional on its face and as applied); *see also Am. Civil Liberties Union v. Alvarez*, 679 F.3d 583, 608 (7th Cir. 2012) (reversing

a conversation made by . . . a person, who is a party to the conversation, under reasonable suspicion that another party to the conversation is committing . . . a criminal offense . . . , and there is reason to believe that evidence of the criminal offense may be obtained by the recording." *Id.* 5/14-3(i). "[T]he exemption requires (1) a subjective suspicion that criminal activity is afoot, and (2) that the suspicion be objectively reasonable." *Carroll v. Lynch*, 698 F.3d 561, 566 (7th Cir. 2012). According to Moore, her actions fell within this exemption because she had reason to believe that Plotke and Alejo were committing or attempting to commit official misconduct, obstruction of justice, and criminal unlawful restraint in violation of Illinois law.

A public officer commits the criminal offense of official misconduct when he "knowingly performs an act which he knows he is forbidden by law to perform." 720 Ill. Comp. Stat. 5/33-3. A person commits the criminal offense of obstructing justice "when, with intent to prevent the apprehension or obstruct the prosecution or defense of any person, he . . . knowingly . . . induces a witness having knowledge material to the subject at issue to . . . conceal . . . herself." *Id.* 5/31-4. Finally, a person commits the criminal offense of "unlawful restraint when he or she knowingly without legal authority detains another." *Id.* 5/10-3.

Plotke and Alejo assert that because Alejo observed a microphone symbol with wave bars on Moore's Blackberry phone, they had both arguable probable cause and probable cause to seize and arrest Moore. The law has been clearly established since *Carroll v. United States*, 267 U.S. 132, 162 (1925), however, that probable cause determinations involve an examination of all

---

denial of preliminary injunction and holding that ACLU had strong likelihood of success on the merits regarding its First Amendment challenge of 720 Ill. Comp. Stat. 5/14-2(a)(1)). "Police are charged to enforce laws until and unless they are declared unconstitutional." *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979).

of the facts and circumstances within the officers' knowledge at the time of the arrest or seizure. When the Court views the facts in their totality and construes all disputed facts in Moore's favor (as it must at this stage), it concludes that summary judgment is not appropriate.

First, under Moore's version of the events, Plotke seized her before he had an opportunity to discover that their conversation was being recorded. Moore testified that she began recording when Sergeant Plotke and Officer Alejo were out of the interview room. The officers then reentered the room, at which point Moore immediately asked to leave and was detained by Plotke when she approached the door. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 19. Based upon these facts, a reasonable jury could find that Moore was illegal seized *before* the officers were aware that she was recording the conversation. *See Brendlin v. California*, 551 U.S. 249, (2007) ("[T]he test for telling when a seizure occurs is whether, in light of all the surrounding circumstances, a reasonable person would have believed he was not free to leave."). Of course, Defendants dispute this and contend that Moore was seized only after they had discovered that she was recording the conversation. *See* Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 23; Defs.' LR 56.1(a)(3) Stmt. ¶¶ 40, 42, 47-49; Pl.'s Dep. at 257:18-21. But this is for the jury to decide.

Second, even assuming that Moore's seizure and arrest did not take place until after the officers learned of the recording, summary judgment still would not be appropriate here because a reasonable jury could find that the officers knew that Moore's actions were exempt from the Illinois eavesdropping statute. When Plotke and Alejo seized and/or arrested Moore, they knew that she had filed a complaint with the Chicago Police Department due to Wilson's actions and had reason to believe that Moore's account was truthful. Indeed, Moore had even showed them the note that Wilson had left with her. Defs.' LR 56.1(a)(3) Stmt. ¶ 34. Plotke stated to Moore that they had spoken to Wilson and his sergeant about the incident. Alejo told Moore that they

9

could almost guarantee that such behavior would never happen again. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 10. And, again according to Moore, Alejo told her, "We don't feel like you should proceed with charges due to the fact that we already talked to the sergeant and the officer." *Id.* ¶ 13. Additionally, both officer informed her that "if this goes to court or if you go to court, you won't win your case." *Id.* ¶ 9. What is more, Alejo told her that if she pursued her case, officers might have to go to her workplace to ask her questions during the investigation. *Id.* ¶ 25. Finally, Moore repeatedly requested that new investigators be assigned to the case, but Plotke told her that there was no one else available. *Id.* ¶¶ 16, 34.

Given these facts, a reasonable jury could find that Plotke and Alejo: (1) knew of Moore's allegations against Wilson, (2) knew that Wilson's conduct was criminal in nature, (3) knew that Wilson had already admitted that the incident had occurred, and (4) knew that there was a piece of paper with Wilson's name and phone number on it that supported Moore's complaint of misconduct. A reasonable jury could also find that, despite this knowledge, the officers took a substantial step toward thwarting a criminal investigation into Moore's conduct by telling Moore that (1) she should not proceed with the charges, (2) if she went to court, she would not win her case, and (3) officers might visit her at workplace to question her if she pursued any charges against Wilson. Based on these facts and circumstances, a reasonable jury also could find that at the time of her seizure and/or arrest, the officers knew that Moore was recording their conversation because she suspected that they were attempting improperly to convince her to drop her complaint against Wilson and sign the letter of declination. In other words, a rational jury could conclude that reasonable officers in Plotke and Alejo's position would have known that Moore's recording did not violate the Illinois eavesdropping statute because she had grounds to believe that they were attempting to obstruct justice and commit

similar offenses. Accordingly, for the reasons stated, genuine issues of material facts exist as to whether Plotke and Alejo had probable cause or arguable probable cause to seize and arrest Moore for eavesdropping. Therefore, Defendants' motion for summary judgment as to Moore's Fourth Amendment claim and state law malicious prosecution claim is denied.

But this does not conclude matters. Defendants also argue in their motion that summary judgment is appropriate as to Plaintiff's First Amendment retaliatory arrest claim. To establish a *prima facie* case of a First Amendment retaliatory arrest, a plaintiff must show that: (1) she "engaged in activity protected by the First Amendment"; (2) she "suffered a deprivation that would likely deter First Amendment activity"; and (3) "the First Amendment activity was at least a motivating factor in the police officer's decision." *Thayer v. Chiczewski*, 705 F.3d 237, 251 (7th Cir. 2012). If a plaintiff can make out a *prima facie* case, "the burden shifts to the defendant to show that the harm would have occurred anyway." *Greene v. Doruff*, 660 F.3d 975, 977 (7th Cir. 2011). If the defendant meets its burden of production, then "the burden shifts back to the plaintiff to demonstrate that the proffered reason was pretextual and that the real reason was retaliatory animus." *Thayer*, 705 F.3d at 252. "At the summary judgment stage, this means a plaintiff must produce evidence upon which a rational finder of fact could infer that the defendant's proffered reason is a lie." *Zellner v. Herrick*, 639 F.3d 371, 379 (7th Cir. 2011).

In support of this theory, Defendants merely reassert their argument that Plokte and Alejo had probable cause to arrest Moore and, alternatively, that they are entitled to qualified immunity because they had arguable probable cause. As discussed above, genuine issues of material fact exists as to these two predicate facts. Furthermore, although the right to be free from retaliatory arrest, even where it is supported by probable cause, was not clearly established at the time of Moore's arrest, *see Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012); *Thayer,* 705 F.3d 253

("The case law is unsettled on whether probable cause is a complete bar to First Amendment retaliatory arrest claims."), whether the arrest itself was supported by probable cause or even arguable probable cause are issues that are disputed in the record. Accordingly, the Court also denies Defendants' motion for summary judgment as to Moore's First Amendment retaliatory arrest claim.

## Conclusion

For the reasons stated above, Alejo, Plotke, and the City of Chicago's motion for summary judgment is denied [doc. no. 79].


**SO ORDERED**                    ENTER: 4/28/14

*[signature]*

**JOHN Z. LEE**
**U.S. District Judge**