IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TIAWANDA MOORE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 12 C 238 |
| v. ) | |
| ) | Judge John Robert Blakey |
| RICHARD PLOTKE and LUIS ALEJO, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Tiawanda Moore sued the City of Chicago and Chicago Police Officers Jason Wilson, Richard Plotke and Luis Alejo pursuant to 42 U.S.C. §1983 for violating her constitutional rights under the First and Fourth Amendments to the United States Constitution. She also alleged malicious prosecution in violation of Illinois state law. To summarize her allegations, she claimed that when Officer Wilson responded to a domestic disturbance call at her home, he groped her and made a pass at her. She called 3-1-1 (the City's non-emergency number) to complain about Wilson's conduct, and her complaint was assigned to the Chicago Police Department's Internal Affairs Division, which investigates complaints of misconduct by Chicago Police Officers. Moore's complaint was assigned to defendant Plotke, who, with the assistance of Alejo, interviewed Moore about her allegations against Wilson. During that interview, Moore used her Blackberry to record surreptitiously the parties' conversation. When Plotke and Alejo discovered that Moore had recorded the conversation, they arrested her for violating the

Illinois eavesdropping statute. Moore was eventually found not guilty of the eavesdropping charge.

The Court held a final pretrial conference in the case on July 16, 2015 and, following that conference, on the eve of trial, plaintiff dismissed defendant Jason Wilson from the case. Plaintiff's claims against the City and defendants Plotke and Alejo were tried to a jury beginning August 3, 2015.

On July 10, 2015, the jury returned a verdict for the defendants on all counts, and judgment was entered on the verdict.

Plaintiff has now moved for a new trial under Federal Rule of Civil Procedure 59. She argues that she is entitled to a new trial for two reasons: first, she argues, defense counsel elicited testimony in violation of the Court's ruling on a particular motion *in limine*; and, second, she argues that she was prejudiced by juror confusion concerning the relevant probable cause standards.

Finally, before the Court is defendants' bill of costs, to which plaintiff objects.

## Discussion

A. Plaintiff's Motion for New Trial

Rule 59 provides that the Court "may, on motion, grant a new trial on all or some of the issues – and to any party . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court. . . ." Rule 59(a)(1)(A). "A new trial is appropriate if the jury's verdict is against the manifest weight of the evidence or if the trial was in some way unfair to the moving party." *Venson v. Altamirano*, 749 F.3d 641, 656 (7th Cir. 2014)(citing *Willis v.*

*Lepine*, 687 F.3d 826, 836 (7th Cir. 2012)). To show unfairness, Moore must show that she was prejudiced. *Krik v. Owens-Illinois, Inc.*, No. 10-CV-07435, 2015 WL 5050143, at *1 (N.D. Ill. Aug. 25, 2015)(citing *United States v. Olano*, 507 U.S. 725, 739 (1993) (jury contact); *Florek v. Vill. of Mundelein*, 649 F.3d 594, 602 (7th Cir. 2011) (exclusion of evidence); Fed.R.Civ.P. 61.

Moore faces a heavy burden under Rule 59(a). *See, e.g., Marcus & Millichap Inv. Servs. of Chicago, Inc. v. Sekulovski*, 639 F.3d 301, 313–14 (7th Cir.2011) (movants "bear a particularly heavy burden because a court will set aside a verdict as contrary to the manifest weigh of the evidence only if no rational jury could have rendered the verdict") (citation omitted). Generally, courts uphold jury verdicts "as long as a reasonable basis exists in the record to support [the] verdict." *Pickett v. Sheridan Health Care Ctr.*, 610 F.3d 434, 440 (7th Cir. 2010). "A new trial should be granted only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks [the] conscience." *Clarett v. Roberts*, 657 F.3d 664, 674 (7th Cir. 2011).

1. <u>Attorney Misconduct</u>

Moore first argues that she is entitled to a new trial because counsel for the defendants asked about her employment, despite a clear ruling *in limine* that the topic was off limits.

It is true that the Court ruled *in limine* that counsel was precluded from eliciting testimony concerning Moore's employment as a stripper or exotic dancer. Moore argues that the Court's ruling was violated – and the trial rendered unfair –

3

as a result of the following exchange, which took place at trial, when defendant Alejo was on the witness stand:

> Q: Did you tell Ms. Moore that you would have to go to her place of employment?
>
> A. Yes.
>
> Q. Did you know what Ms. Moore's place of employment was at the time?
>
> A. Yes.
>
> Q. And what was it?
>
> A. She said –

Transcript of Proceedings from 8/4/15, p. 57 (attached to plaintiff's motion for new trial [210-1], p. 2). That is the full extent of the challenged colloquy.

As soon as counsel asked the question, the Court raised its own objection and called a sidebar. *Id.* And, at that sidebar – outside the presence of the jury – the Court admonished counsel for going down a road she knew (or should have known) was precluded by the Court's prior ruling:

> THE COURT: How do you expect him to answer your question, counsel?
>
> MS. MARTIN: That he would say that she was a stripper. And the reason that this is relevant is that's why she didn't want him going to the strip club, because –
>
> THE COURT: I thought this was addressed by a motion i*n limine.*
>
> MR. JOHNSON: Yes, your Honor.
>
> THE COURT: Is that your recollection? In fact, I think I specifically ruled that it was excluded and that no question was to

4

> bring it out unless it was brought up at sidebar, and subject to sanctions. Is that correct, counsel? Is that what you remember?
>
> MS. MARTIN: Yes, it is.
>
> THE COURT [to Ms. Pinkston]: I'm asking you. Is that what you remember?
>
> MS. PINKSTON: Yes, your Honor.
>
> THE COURT: All right. So that objection is sustained.
>
> MR. JOHNSON: Your Honor, can we inform the witness because the witness still might say something?
>
> THE COURT: She is going to move on to a different question, so I don't think that's going to come out. All right.

Transcript of Proceedings of August 4, 2015 [208], pp. 57-58. After the sidebar, the Court advised the jury: "[t]hat question is not going to be asked. We are moving on to another area. Go ahead and ask your next question. *Id.*, p. 58.

In connection with this argument, Moore argues that the "error lies in what was actually communicated." Reply [214], p. 1. But what was actually communicated about plaintiff's profession and place of employment was, in fact, *nothing*. There was no misconduct and no violation of the Court's Order because the Court enforced its pretrial ruling and prevented it.

Nevertheless, despite this clear record, Moore somehow suggests that the mere fact that the issue was raised was itself enough to alert the jury "that something tawdry was being concealed." [210], p. 3. She argues that this colloquy "irrevocably tainted the trial." [210], p. 6. As a result, Moore argues, the jury could no longer trust her or her counsel. *Id.*, p. 4. The frivolous argument defies both

5

logic and the trial record. First, the evidence was not admitted – the testimony never came out and the jury never learned about Moore's employment. Additionally, even in cases where evidence is improperly admitted (here, it was not), the Court could grant a new trial "only in 'extraordinary situations' where the 'the improperly admitted evidence had a substantial influence over the jury, and the result reached was inconsistent with substantial justice.'" *Shick v. Ill. Dep't of Human Servs.*, 307 F.3d 605, 611 (7th Cir.2002)(cited in *Payne v. Maher*, No. 11 C 6623, 2015 WL 4483954, at *1 (N.D. Ill. July 22, 2015)). That is not the case here. Moore's argument assumes that the jury would infer from the fact that an objection and sidebar occurred that Moore was a stripper and that something "tawdry" was going on. Moore's argument requires an inferential leap that is not supported and borders on absurd. This was not the first time the Court objected, called a sidebar or admonished counsel about examination questions; by this point in the trial, the Court had done so several times with respect to both Moore's counsel and defendants' counsel. So the notion that the jury would read anything into this – let alone infer from it that something tawdry was going on – is simply not well founded. Here, no evidence was improperly admitted, no precluded evidence or testimony was elicited and no prejudice resulted – especially, where the Court properly advised the jury in its instructions regarding the nature of objections and sidebars, and that their verdict must be based solely upon the evidence in the case. Over the course of trial, the Court also observed the demeanor of the jury, including at this relevant point in the proceedings, and can say now without doubt that no harm

6

came to the plaintiff. Although that potentially could have happened, given the direction in which defense counsel was heading, the Court prevented it and Moore's argument on this issue is, accordingly, rejected.

2. Probable Cause Limiting Instruction

In connection with Moore's malicious prosecution claim, the parties elicited evidence concerning the decision made by the Cook County State's Attorney's Office to pursue charges against Moore for eavesdropping. In the course of this testimony, it became apparent that the witnesses and attorneys on both sides were going to be making references "probable cause." "Probable cause" was also at issue in the determination the jury would ultimately have to make concerning whether the defendants' arrest of Moore at IAD headquarters was proper. Because of the potential for juror confusion, the parties discussed the issue, and the Court ultimately adopted the plaintiff's version of a limiting instruction to be used during trial.

Specifically, before asking Ms. Moore on cross-examination about any finding of probable cause that may have been made in her criminal eavesdropping trial, counsel for the defendants requested a sidebar. At that time, the parties discussed with the Court the potential for jury confusion about the probable cause determination made by the duty judge and the probable cause determination the jury would be required to make when assessing Ms. Moore's malicious prosecution claim against the defendants. The parties and the Court discussed the issue at length, initially at sidebar and then on a break, when it became clear that it was

7

going to take a while to resolve the issue. After the jury was excused, the following exchange occurred:

> MS PINKSTON: Your Honor, may I have one sidebar to insure that I don't –
>
> THE COURT: Yes. Sure.
>
> (The following proceedings were had at sidebar: )
>
> MS. PINKSTON: In response to a question, Ms. Moore testified that she went before the jury judge [actually referring to the "duty judge" in state court]. . . .
>
> Because of that testimony on direct, I intended to ask her about the duty judge. She testified in her deposition that the duty judgment told her that probable cause had been found from her arrest.
>
> THE COURT: Okay. Is there any objection?
>
> MR. JOHNSON: Well, they jury might determine the probable cause to mean that there was some type of independent determination of the officers' actions.
>
> * * *
>
> THE COURT: Why is it relevant to the probable cause? What element of the probable cause? If you get this into evidence, how would you argue it, as to what point?
>
> MS. PINKSTON: The commencement continued – the continued portion, however, because specifically the testimony has been over and over again that she spent 371 days awaiting this prosecution and basically is asserting that all this while they had control over the prosecution.
>
> THE COURT: What's your response to that? That once they started the thing in motion, that there was a variety of determinations?
>
> Obviously the jury is going to be instructed regarding their factual determination of probable cause. Do you require a limiting instruction at this point?

8

* * *

Because you have brought out in your case the fact that they were awaiting trial for a long period of time. So they would certainly be entitled to explain exactly what some of that delay was, or not necessarily delay, but continuation of it. As long as the jury knows that they are going to have to make their own determination of probable cause with respect to that claim.

* * *

I am going to excuse the jury. We are going to have a longer conversation about this.

(End of sidebar proceedings.)

* * *

THE COURT: All right. So they are trying to respond to the evidence that was brought out regarding the length and the different portions of the criminal process because the criminal process went out for such a long period of time.

My understanding of your objection is that if they hear that a judge found probably cause, that would be confusing to the jury under 403 because they are going to have to make their own determination of probable cause with respect to the malicious prosecution claim, and that's not the same determination that we are talking about with this evidence. Is that correct?

MR. JOHNSON: Correct, your Honor.

THE COURT: All right. So it seems to me that – can the parties work out a limiting instruction? Because you are not going to argue, ladies and gentlemen, you must find that probable cause exists for the malicious prosecution claim because the duty judge said X. You are not going to argue it that way nor would I let you.

MS. PINKSTON: Absolutely not, your Honor.

THE COURT: So I understand why you want to get this in and how you want to argue it, which sounds like a legitimate purpose. But I think their objection is well taken with respect to the potential for

confusion. I think, however, in my discretion, it can be corrected by a limiting instruction.

Do the parties want to take five minutes and try to fashion a limiting instruction that they might be able to agree on"

MS. PINKSTON: Yes, your Honor.

\* \* \*

THE COURT: They can bring in the evidence, whether or not it comes in through this witness or something else. I think this might be a recurring issue is my understanding. If you are going to call the felony review ASAs, we are going to have the same issue later, because they are going to be not necessarily finding probable cause, but they are going to approve felony review charges. They are going to want to bring that out to explain the process and how come a criminal trial takes, you know, 300-plus – but again, that determination is not going to – has a potential for confusion.

So I want to have a limiting instruction, so any time they hear that somebody at some point in the process made a probable cause determination, that's not their probable cause determination. That's a different thing. And that's – and I think both sides are in agreement about the relevance and the ways in which that evidence is limited. I have obviously given them, in the instruction that at certain points in the trial, they be given evidence with a limiting instruction. And my inclination, because I think it's going to come up more than once, is to fashion a limiting instruction to protect your client so that the jury knows that any time someone uses the word PC, it doesn't necessarily mean the PC that they are going to do and I am going to instruct them about later.

So I want to – as that evidence comes in, I want to make sure they understand it's only coming in for a limited purpose.

So hopefully we can work out some agreed language because if it doesn't come up here – and maybe it doesn't come up with this witness in this particular Q and A – it's going to come up sooner or later, very soon. So let's see if we can work out something now so that later on I have got something I can give them quickly. Okay?

MR. JOHNSON: Yes, your Honor.

10

Transcript of Proceedings of August 4, 2015, pp. 77-85 ([207], p. 38-46).

The parties then worked to draft an agreed limiting instruction. In the end, they were unable to agree entirely, and the Court adopted the limiting instruction proffered by the plaintiff, over the defendants' objection. When the trial resumed, defense counsel asked Ms. Moore about her appearance before the duty judge on the eavesdropping charge:

> Q: And that duty judge told you that there was probable cause for your arrest, correct?
>
> A: Yes.

Transcript of Proceedings of August 4, 2015, p. 95 ([207], p. 56). The Court then gave the limiting instruction drafted by the plaintiff:

> THE COURT: Ladies and gentlemen, the following evidence – this evidence – concerning the probable cause determination of the duty judge is to be considered by you to explain the continuation of the criminal proceeding only and for no other purpose.
> The probable cause determination made by the duty judge is a different determination then the probable cause determination that you will make regarding the probable cause element that you will evaluate regarding plaintiff's false arrest and malicious prosecution claims.
> Go ahead, counsel.

*Id.*

The issue came up again when defense counsel was questioning the Assistant State's Attorney who approved the felony charges against Ms. Moore:

> THE COURT: Counsel, at this point are you going to ask about the first chair's assessment of the case?
>
> MS. GOMEZ-FEIE: I am.
>
> THE COURT: All right. Ladies and gentlemen, the following

11

evidence regarding the assessment of the case by the prosecuting attorney is to be considered by you to explain the continuation of the criminal proceeding and for no other purpose.

The assessment determination made by the prosecuting attorney is a different determination than the probable cause determination that you will make regarding the probable cause element that you will evaluate regarding plaintiff's false arrest and malicious prosecution claims. All right. Counsel, proceed.

Transcript of Proceedings of August 5, 2015, p. 58, line 23 – p. 59, line 11.

Despite these clear limiting instructions, Moore now argues that she is entitled to a new trial because the jury was somehow still confused about this issue. As the trial record show, however, the Court specifically addressed this issue and instructed the jury – reading an instruction agreed to in principle by the parties and specifically drafted by the plaintiff herself – that the probable cause determinations made by the duty judge and the state's attorney's office to continue the criminal proceedings against Ms. Moore were not the same as the probable cause standard to be applied by the jury in its consideration of Moore's claim of unreasonable seizure.

Indeed, Moore concedes that the limiting instruction on probable cause was "not the error" and "was fine"; she argues instead that the "problem was that the testimony elicited by Counsel bore little to no relation to the instruction." Reply [214], p. 1. But that assertion is not accurate.

Counsel for the defendants asked the witnesses about their interactions with Moore in the IAD interview room and about their observations of her and her blackberry device. Office Alejo testified that he saw Moore's Blackberry and observed the microphone symbol on the screen indicating that the phone was recording the parties' conversation. This was the evidence that led the defendants

12

to conclude that there was probable cause to arrest Moore for violation of the eavesdropping statute.

Later in the trial, counsel asked the assistant state's attorney assigned to felony review for the case about her encounter with Ms. Moore, her investigation of the alleged eavesdropping, her interviews with the defendants and Ms. Moore, and about her decision to approve felony charges. Like the brief references to the duty judge, this testimony is precisely the type of evidence that the parties envisioned when the limited instruction was constructed. Indeed, no other objection was raised at trial. Accordingly, the Court rejects Moore's claim that she suffered any prejudice as a result of the Court's limiting instruction or the evidence adduced at trial concerning the two types of probable cause that were relevant to these proceedings.

B. <u>Defendants' Bill of Costs</u>

On September 9, 2015, the defendants filed their bill of costs, seeking to recover from Moore $13,454.30. Moore objects to the bill in its entirety and argues that no costs should be assessed.

Federal Rule of Civil Procedure 54 provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs – other than attorney's fees – should be allowed to the prevailing party." Local Rule 54.1 provides that "[w]ithin 30 days of the entry of a judgment allowing costs, the prevailing party shall file a bill of costs with the clerk and serve a copy of the bill on each adverse party." Here, there is no question that defendants prevailed. The jury returned a verdict in their

13

favor on all counts. And there is no question that defendants' bill of costs is timely. Judgment was entered August 25, 2015 and defendants filed their bill of costs on September 9, 2015.

1. Plaintiff's Inability to Pay

Moore first argues that defendants' bill of costs should be rejected in total because she simply cannot pay it. It is within the "discretion of the district court to consider a plaintiff's indigency in denying costs under Rule 54(d)" and "the inability to pay is a proper factor to be considered in granting or denying taxable costs." *Badillo v. Cent. Steel & Wire Co.*, 717 F.2d 1160, 1165 (7th Cir. 1983)(citing *Delta Airlines, Inc. v. Colbert*, 692 F.2d 489 (7th Cir.1982)). Thus, the presumption that costs are to be awarded to the prevailing party "may be overcome by a showing of indigency" in particular cases.

Nevertheless, the "exception is a narrow one" and "indigence does not automatically excuse the losing party from paying the prevailing party's costs." *Rivera v. City of Chicago*, 469 F.3d 631, 635-636 (7th Cir. 2006)(citing *Luckey v. Baxter Healthcare Corp.*, 183 F.3d 730, 733-34 (7th Cir.1999)). Before determining that costs should be denied on the basis of indigence, the Court must first "make a threshold factual finding that the losing party is 'incapable of paying the court-imposed costs at this time or in the future.'" *Rivera*, 469 F.3d at 635 (quoting *McGill v. Faulkner*, 18 F.3d 456, 459 (7th Cir. 1994)). Second, the Court "should consider the amount of costs, the good faith of the losing party, and the closeness and difficulty of the issues raised by [the] case . . . ." *Rivera*, 469 F.3d at 635.

14

Here, Moore bears the burden of providing the Court with "sufficient documentation to support" a finding that she is unable to pay costs now or in the future. *Rivera*, 469 F.3d at 635. She has not done so. In her response to the bill of costs, she notes that she is disabled and has low paying intermittent employment. But she testified under oath at trial that she works two jobs: "I have two jobs. I work as a waitress at Irish Bread Pub, and I work at a warehouse as a candy sorter." Transcript of Proceedings of August 4, 2015 [206], p. 3. She further testified that she is married and has no children. *Id.* In her supplemental response [217], which includes an unsigned (and, therefore, unsworn) affidavit, plaintiff also indicates that she makes $8.00/hour (or roughly $300/month) working in a shipping department and makes about $500/month waitressing. [217-1]. The affidavit also indicates that plaintiff receives $733/month in governmental assistance and has monthly expenses of about $1,250. *Id.* This evidence does not establish an inability to pay now and in the future. Rather, it demonstrates, consistent with plaintiff's testimony at trial, that plaintiff is capable of working full time and earning an income that exceeds her expenses.

A couple of cases illustrate the circumstances that might give rise to a finding of indigence in the context of costs. In *Cross v. Roadway Express*, the plaintiff was an unemployed single parent of three children who received $840/month in Social Security payments and suffered from severe mental health problems that made it impossible to work. No. 93 C 2584, 1994 WL 592168, at *1 (N.D. Ill. Oct. 26, 1994). The court determined that, under the circumstances, plaintiff was unable to pay the

15

taxable costs. *Id*. In contrast, the plaintiff in *Rivera* was a single mother of four children, who worked full time, earning approximately $1,800 per month. *Rivera v. City of Chicago*, 469 F.3d 631, 636-637 (7th Cir. 2006). Under these circumstances, and because the plaintiff had not itemized her monthly expenses, the Seventh Circuit found that Rivera failed to demonstrate that she was incapable of paying costs at some point in the future, and held that the trial court had abused its discretion when it declined to tax costs against her. *Id.* at 437.

Certainly, plaintiff's circumstances here are closer to Rivera's than Cross'. She works full time and also receives "government assistance"; she has no dependents. Based upon the record presented, the Court is not persuaded that plaintiff is indigent, as that term is used within this context. Indeed, Ms. Moore managed to pay the filing fee necessary to commence this lawsuit and did not seek leave to proceed *in forma pauperis*. In short, she has not demonstrated that she will be unable to pay costs now or in the future and thus is not entitled to an indigence exception.

2. <u>Analysis of the Specific Costs Claimed</u>

The specific costs subject to taxation are listed in 28 U.S.C. §1920. The statute allows a "judge or clerk of any court of the United States" to tax as costs the following:

> (1) Fees of the clerk and marshal;
>
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;

16

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

Local Rule 54.1(b) addresses recovery of costs associated with transcripts. It provides:

> [s]ubject to the provisions of Fed.R.Civ.P. 54(d), the expense of any prevailing party in necessarily obtaining all or any part of a transcript for use in a case, for purposes of a new trial, or amended findings, or for appeal shall be taxable as costs against the adverse party. If in taxing costs the clerk finds that a transcript or deposition was necessarily obtained, the costs of the transcript or deposition shall not exceed the regular copy rate as established by the Judicial Conference of the United States and in effect at the time the transcript or deposition was filed . . . . Court reporter appearance fees may be awarded in addition to the per page limit, but the fees shall not exceed the published rates on the Court website . . . . Except as otherwise ordered by the court, only the cost of the original of such transcript or deposition together with the cost of one copy each where needed by counsel and, for depositions, the copy provided to the court shall be allowed.

To be awarded, the costs must also be both reasonable and necessary; where the Court is unable to determine whether claimed costs were reasonable or necessary for use in a case, that claim for costs should be denied. *E.g., Interclaim Holdings Ltd. v. Ness, Motley, Loadholt, Richardson & Poole*, No. 00 C 7620, 2004 WL 557388, at *2 (N.D. Ill. March 22, 2004).

In their bill of costs, defendants seek to recover $535.01 in fees for summons and subpoenas; $6,239.75 in court reporter fees; $264.75 for copies; and $6,414.79 in

17

"other costs." Moore challenges defendants' entitlement to any costs associated with defendant Jason Wilson because the stipulation dismissing Wilson provided that the claims against him were dismissed with prejudice and with each side to bear its own costs. She also argues that many of the costs are either excessive or not recoverable under Rule 54 and 28 U.S.C. §1920. The Court agrees that costs associated with the claims against Officer Jason Wilson should not be awarded, and that certain portions of the defendants' requested costs should be disallowed to some extent.

First, with respect to the fees associated with service and summons and subpoena, those costs will be disallowed. None of these witnesses testified at trial and the Court is unable to determine whether the witnesses' testimony related to Officer Wilson or Officers Plotke and Alejo. Accordingly, the entire $535.01 will be disallowed.

With respect to deposition and transcript costs, the Court will allow defendants to recover those associated with plaintiff, Marcus-Gilmore, Luis Alejo and Richard Plotke, as those were necessarily obtained for use in the case and the amounts claimed are reasonable and in line with Local Rule 54.1. For the same reason, the Court will allow the costs associated with the transcript of the underlying criminal case. The Court will disallow the remainder of the deposition and transcript costs claimed by defendants.

The Court will also disallow the $264.75 defendants claim for exemplification of copies; these documents were available electronically and it is has not been

18

shown that the hardcopy versions were necessarily obtained for use in the case against Plotke and Alejo. For this same reason, the Court will also disallow the $462.00 claimed for U.S. Legal Support Inc.

The defendants' bill of costs also includes "other costs" that are itemized but not explained in any detail. As a result, the Court is unable to tell what, exactly, these charges cover. Some, including the costs associated with Jael Burks, are clearly not allowable, either because they relate to the case against defendant Wilson or because they were not necessarily obtained for use in the case. In fact, the defendants, recognizing that the costs were waived pursuant to the dismissal of Wilson, withdrew their claim for the costs associated with Ms. Burks' telephonic appearance and deposition, as well as the claim for costs associated with Officer Robinson's deposition transcript. *See* Defendants' Joint Reply in Support of their Bill of Costs [218], pp. 5-6.

For some of the remaining costs, however, the Court is still left to decipher, without evidence, whether or not they relate to the case against Officer Wilson and whether or not they were, in fact, necessary to the trial against the remaining defendants. For example, the Court finds that the audio file made from plaintiff's blackberry recording was indeed necessary for use in the case and the charges associated with the synchronization and creation of that file would be allowed if reasonable. Based upon the record, however the Court is unable to tell how much of these "other costs" relate to that recording, and, as a result, is unable to award those costs. Accordingly, the $6,414.79 in "other costs" must be disallowed.

In light of the above, the Court will tax costs in the amount of $3,932.25.

### **Conclusion**

For the reasons explained above, Moore's motion for a new trial [210] is denied. Her objections [215] to defendants' bill of costs [212] are sustained in part and overruled in part. The Court awards costs to defendants in the amount of $3,932.25.

Dated: November 30, 2015                    Entered:

_John Blay_